Laura V. Studwell
THE KILLIAN FIRM, P.C.
555 Route 1 South, Suite 430
Iselin, NJ  08830
732-912-2100
*Attorneys for Defendant Arthur Friedman*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN J. NEGRI and PHILIP NEGRI, | Docket No. 14-cv-10233 |
| Plaintiff, | Hon. Gregory H. Woods, U.S.D.J. |
| vs. | |
| MICHAEL J. FRIEDMAN, ARTHUR FRIEDMAN, FIRST ASCENT, LLC and P.J. LOUIS | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## ARTHUR FRIEDMAN'S RENEWED MOTION TO DISMISS THE COMPLAINT

### INTRODUCTION AND SUMMARY OF THE ARGUMENT

In a desperate attempt to keep defendant Michael Friedman's father, Arthur Friedman, in the case despite no wrong doing on Arthur's part, and in an apparent attempt to put pressure on defendant, Michael Friedman, plaintiffs Ryan J. Negria and Philip Negri (collectively "Negri") have resorted to making all manner of unsubstantiated allegations. Although the source of these new allegations are unclear, most if not all of the "new" allegations could have been debunked rather easily by a simple review of publicly available documents. Although allegations are generally taken as true for purposes of a motion to dismiss, they must still have a basis in fact, which none of these new allegations actually do. When the dust settles, the fact remains that Negri has absolutely no relationship with Arthur Friedman, conducted no transactions with

Arthur Friedman (other than Arthur serving as escrow agent for the Negri Electronics transaction), and any potential claims against Arthur Friedman are not only premature, the elements of those claims cannot be established.    Accordingly, the claims against Arthur Friedman should be dismissed.

The amended complaint now alleges the following four claims against Arthur Friedman: 1) violations of the New York State Debtor Creditor Law, NY Debt Cred. Law Sec. 273 – for the alleged transfer of $87,000; 2) violation of New York State Debtor and Creditor Law, NY Debt. Cred. Sec. 273 – for the alleged transfer of all assets of Michael Friedman; 3) unjust enrichment; and 4) breach of contract.  Despite the additional allegations against Arthur Friedman, debunked below, the fact remains that Negri and Negri Electronics, Inc. ("NEI") are two completely different entities, and Negri, the individuals, were never involved in any transactions with Arthur Friedman, other than Arthur serving as the escrow agent to hold funds that Negri ultimately received as part of the sale of NEI.  Because Negri is the plaintiff in this action and not NEI, the company, Negri does not have standing to assert any of its claims against Arthur Friedman.

Further, as Negri has not suffered any cognizable injury from the alleged conduct of Friedman and any claims are contingent on future events occurring – including Negri regaining ownership of NEI – the claims against Arthur Friedman are not ripe for determination by this Court and must be dismissed.

Finally, on the pleadings, Negri has failed to state a claim upon which relief can be granted because Negri cannot satisfy the elements of any of their claims.  For the first claim for a violation of the New York Debtor Creditor Law, Negri fails to establish that the alleged "debtor" – as it relates to this specific cause of action, First Ascent – made any improper transfers of funds that should be set aside – the only transfers were by NEI, itself.  As for the second count for

violation of New York's Debtor Creditor Law, aside from rank speculation, Negri cannot establish that any improper transfers of assets were made. In fact, a simple review of public documents demonstrates that the allegations of a supposed transfer of publicly traded stock to Arthur Friedman were completely fabricated.

Negri also alleges a claim of unjust enrichment. . In regards to this claim, Negri has not alleged any facts to establish that a purported "benefit" received by Friedman was to his "detriment." Negri himself has not suffered any cognizable detriment and there is nothing in the complaint to suggest otherwise. Negri has further failed to establish any connection between himself and Friedman, which is a requirement under settled New York law to proceed on a claim of unjust enrichment.

Finally, Negri asserts a claim for breach of contract based on the unsupported allegation that Arthur Friedman was a member of First Ascent. Putting aside whether Negri can bring direct claims at this point against the members of First Ascent, LLC, the fact is that Arthur Friedman never was a member of First Ascent. Negri's counsel has been provided information establishing this fact, but has still refused to dismiss the breach of contract claim. Arthur Friedman did not enter into any contract related to the sale of NEI and accordingly, Negri's breach of contract claim is unfounded.

Negri's decision to include spurious allegations without verifying whether the facts included in the allegations are actually true – something that could have been done very easily had Negri done some research of publicly available documents – is a violation of Federal Rule of Civil Procedure 11 and sanctionable. For all of these reasons, the complaint against Arthur Friedman should be dismissed with prejudice.

# FACTS[1]

*General Allegations:*

According to the Complaint, NEI was in the business of selling unlocked cell phones since 2006. In around early 2012, NEI sought the help of outside investors in order to continue to grow the business. Approximately one year later, Negri was introduced to Michael Friedman – a defendant in this action. Although at first the discussions between Negri and Michael Friedman were for an investment in the business, by November 2013, the parties had entered into a Term Sheet for the purchase of NEI by a company called First Ascent, LLC. The closing date for the purchase was set for December 30, 2013. After some due diligence was conducted, Michael Friedman (on behalf of First Ascent), Negri, and Philip Negri entered into a stock purchase agreement for the sale of NEI to First Ascent.

The stock purchase agreement provided in relevant part that First Ascent would acquire all outstanding stock in NEI for the purchase price of $7,212,19.34 payable over four years. Under the payment schedule set forth in the agreement, Negri and Philip Negri received approximately $500,000 at closing with Negri receiving the majority of those funds. Negri was scheduled to receive additional payments in 2014, 2015, 2016 and 2017; however, the amounts under the original stock purchase agreement were allegedly not paid in a timely manner. Therefore, in March 2014, NEI, Michael Friedman, Negri and Philip Negri – notably not Arthur Friedman – entered into a First Amendment to Stock Purchase Agreement. Under the new Agreement, the payments required to be made in 2014 were adjusted and the payment of the balance of the purchase price was to be paid by the close of 2016 as opposed to 2017.

---

[1] All of the facts are obtained from the allegations in the Complaint (which must be taken as true for the purpose of this motion to dismiss), the documents cited in the Complaint, and matters as to which this Court may take judicial notice.

Despite the revised payment schedule, the required payments were allegedly not paid in a timely manner.   At the same time, NEI's business began to flounder, ultimately becoming insolvent in or around July 2014.  Negri brought this action to recover the damages allegedly caused by Michael Friedman, P.J. Louis and First Ascent.

*Allegations against Arthur Friedman:*

In support of Negri's four claims, the Complaint makes very few added allegations against Arthur Friedman himself (most are repetitive) and the additional allegations added to the complaint are either completely unsubstantiated or just simply untrue.   Specifically, the Complaint alleges the following:

**Paragraph 1:** "This action seeks to redress the blatant and duplicitous scheme perpetuated by Defendants Friedman, Arthur Friedman, First Ascent and Louis by which defendants induced plaintiffs to sell their profitable consumer- electronics business, Negri Electronics, Inc. (the "Company") to First Ascent all the while intending: (i) to strip the company of its assets, (ii) to renege on $6 Million in payments due to plaintiffs, and (iii) to leave plaintiffs with the charred remains of a business (and its liabilities) which defendants plundered."

[Notably, Arthur Friedman's name was simply added to this allegation without any substantiation of the fact that Arthur Friedman was even involved in the transaction whatsoever]

**Paragraph 3:** "Almost immediately thereafter, defendant Friedman began to loot the company of its assets, withdrawing cash for his personal use and to pay off, inter alia, Friedman's unrelated indebtedness to his father, Arthur Friedman."

[There are no allegations regarding what this supposed "unrelated indebtedness" to Arthur Friedman was or when it was incurred].

**Paragraph 4:** "Upon information and believe, at around the same time, defendant Friedman transferred all of his assets to his father, so as to effectively render himself judgment-proof and his personal guarantee worthless."

[As will be demonstrated below, this allegation is not only completely unsubstantiated, but is patently false, which could have been verified by Negri with a simple review of publicly available documents].

**Paragraph 11:** "Upon information and belief, defendant Arthur Friedman is an attorney, accountant and father of [Michael] Friedman. Defendant Arthur Friedman is a resident of New York, New York."

**Paragraph 13:** "Upon information and belief, defendant First Ascent is a Delaware limited liability company, having its principle place of business at 280 Madison Avenue, New York, New York 10016. Defendants Friedman and Arthur Friedman are the owners of First Ascent."

[The part of these allegations relating to Arthur Friedman is completely untrue – Arthur Friedman is not nor was he ever an owner/member of First Ascent. Documents proving this fact were provided to plaintiffs to no avail].

**Paragraph 36:** Under the payment schedule set forth in the Agreement, the sellers received approximately $500,000 in "Closing Funds" at closing. These Closing Funds were held in escrow until closing by Arthur Friedman, as escrow agent under the Agreement."

[It is undisputed that Arthur Friedman held the Closing Funds in escrow and provided them to plaintiffs after the deal was consummated].

**Paragraph 43:** "Upon information and belief, the 'Shareholder' to whom the $87,000 wire transfer was made on January 9, 2014 was Michael Friedman's father, Arthur Friedman. While Arthur Friedman was never a shareholder of the Company, he was an owner of First Ascent."

[Again plaintiffs make completely false allegations regarding the ownership of First Ascent. Arthur Friedman was never an owner/member of First Ascent].

**Paragraph 44:** "Upon information and belief, the $87,000 transfer to Arthur Friedman, was made to satisfy a personal obligation owed by Friedman to his father. Neither the Company, nor First Ascent, received any consideration for this Payment."

**Paragraph 45:** "Moreover, upon information and belief, the lump sum withdrawal of $87,000 from the Company's operating account rendered the company, which operated on narrow margins, insolvent."

[This new allegation is completely inconsistent with other allegations in the amended complaint suggesting that the company became insolvent in the Summer of 2014].

**Paragraph 62:** "Upon information and belief, in an effort to avoid his creditors, Friedman transferred all of his personal assets, including his stock in the publicly-traded company of which he is CEO: Fresh Harvest Products, Inc., to his father in early 2014."

[Another complete fabrication by plaintiffs. With a little research, plaintiffs would have discovered that any transfers by insiders or major shareholders of a publicly traded company must be disclosed to the public (See Securiteis Exchange Act). A review of the transaction history of Fresh Harvest shows no transfers to Arthur Friedman whatsoever – and certainly none in the early 2014 timeframe referenced in this paragraph].

**Paragraph 64:** "Indeed, at or around this time, Friedman admitted to transferring assets to his father in order to protect his assets from creditors, including from his former girlfriend, in relation to a custody dispute regarding his daughter."

[A gratuitous mention of Arthur Friedman despite the fact that the allegations concern supposed conduct of Michael Friedman].

**Paragraph 65:** "Friedman's confidence in this scheme – in which Arthur Friedman is complicit – is apparent from his failure to appear in this action, despite the fact that service of process has been effectuated, by personal delivery to a person of suitable age and discretion, followed by mail, to 280 Madison Avenue, New York, New York, Suite 1005, the business address of both First Ascent and Fresh Harvest Products, Inc."

[Another gratuitous mention of Arthur Friedman with no support whatsoever].

The rest of the allegations against Arthur Friedman are repetitious of the previously alleged conduct in connection with the various Counts of the amended complaint.

## ARGUMENT

### Point I

**Negri has failed to allege that he has suffered an injury in fact that is causally connected to any conduct of Arthur Friedman and has therefore failed to satisfy the standing requirements under Article III**

Negri, the individual, has not suffered any injury as a result of any conduct of Arthur Friedman and accordingly, he has no standing to bring this action against Arthur Friedman for violations of the New York Debtor Creditor Law, for unjust enrichment or for breach of contract. The law of standing has its roots in Article III's case and controversy requirement. Summers v. Earth Island Institute, 555 U.S. 488, 492-93 (2009); DaimlerChrysler Corporation v. Cuno, 547 U.S. 332, 340-41 (2006). The U.S. Supreme Court has established a three-part test for standing. The "irreducible constitutional minimum of standing" requires the plaintiff to establish:

> First ... an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable

decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); *see also* Summers, 555 U.S. at 493.

The Supreme Court has made it clear that the burden of establishing standing rests on the plaintiff. DaimlerChrysler, 547 U.S. at 342, n.3; FW/PBS Incorporated v. Dallas, 493 U.S. 215, 231 (1990).  Plaintiffs must demonstrate standing for each claim and each request for relief. Monsanto Company v. Geerston Seed Farms, 130 S. Ct. 2743, 2754 (2010) (plaintiffs must demonstrate standing to pursue each form of relief sought); Davis, 554 U.S. at 734; City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).  There is no "supplemental" standing: standing to assert one claim does not create standing to assert claims arising from the same nucleus of operative facts. Daimler Chrysler, 547 U.S. at 353.

Here, Negri has failed to establish standing for his claims against Arthur Friedman. Negri has not only failed to establish that he has suffered an injury in fact, he has also failed to plead sufficient facts to establish any causal connection between the conduct of Arthur Friedman (alleged receipt of approximately $87,000 and the unsubstantiated allegation that he received all of the assets of Michael Friedman) and any alleged injury suffered by Negri.  Finally, Negri cannot establish that a favorable ruling in this action would redress any supposed injury he has suffered.

Under well-established New York law, it is axiomatic that a corporation is a legal entity separate and distinct from its shareholders. See Perry-Gething Found. v. Stinson, 218 A.D.2d 791, 793 (A.D. 2d 1995) citing Matter of Total Care Health Indus. v Department of Social Servs., 144 AD2d 678, 678 (A.D. 2d 1988). The claims in this action are asserted by Negri, the individual, as opposed to NEI, the corporate entity.  Assuming that the allegations of the Complaint are true, it was the corporation's assets that were allegedly improperly transferred to Arthur Friedman and not the assets of Negri himself; indeed, after the sale of the business, Negri

was no longer even a shareholder of the company. Accordingly, Negri himself was not deprived of any funds nor was he injured in any way from the alleged transfer of NEI funds. Specific to his claims for violation of the New York Debtor Creditor Laws, once again, it was not Negri himself that was deprived of any assets it was allegedly NEI. Further, there is no basis for Negri's claim that he is a creditor of Friedman or First Ascent, since the issue of any obligations owed to Negri are still up for debate. It is for this reason as well that Negri cannot establish any causal connection between the conduct of Arthur Friedman – the alleged receipt of funds from NEI or Michael Friedman himself – to any supposed injury to Negri, the individual.

On the pleadings, Negri has completely failed to meet his burden to establish the three required elements for standing under Article III for any of his claims and therefore, the Complaint against Arthur Friedman should be dismissed.

## Point II

### Because Negri's claims are contingent on future events occurring – Negri regaining control of the separate corporate entity, NEI – his claim is not ripe for adjudication by this Court

The claims, if any, that Negri may have against Arthur Friedman are contingent upon certain future events occurring and are therefore not ripe for adjudication. "To be justiciable, a cause of action must be ripe -- it must present a real, substantial controversy, not a mere hypothetical question." Kurtz v. Verizon N.Y., Inc., 758 F.3d 506, 511 (2d Cir. 2014) citing Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) ("A claim is not ripe if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.")

Here, the various claims against Arthur Friedman are not ripe for adjudication.  In order for Negri to have a cognizable claim against Arthur Friedman, "contingent future events" must occur.  As noted above, Negri and NEI are two separate and distinct entities that possess separate and distinct rights.  See Perry-Gething Found. v. Stinson, 218 A.D.2d 791, 793 (A.D. 2d 1995) (it is axiomatic that a corporation is a legal entity separate and distinct from its shareholders). According to the allegations of the Complaint, it was the assets of NEI that were allegedly transferred to Arthur Friedman and not any assets of Negri himself.  Accordingly, in order to properly assert a claim against Arthur Friedman, Negri must first establish that he can assert the rights of NEI and until he can do so, his individual claims against Arthur Friedman are not ripe for adjudication.  The "contingent future event" that must occur prior to Negri's claims being ripe for adjudication include success in Negri's separate claims for breach of the two stock purchase agreements – the second stock purchase agreement that was actually entered into two months after the supposed transfer of $87,000 to Arthur Friedman – that allegedly entitle him to regain his shares and ownership of NEI.  Until Negri prevails on those claims however, he has no right to assert any claims NEI may (or may not) have against Arthur Friedman.  Accordingly, Negri's claims are not ripe for adjudication at this time and should be dismissed.

### Point III

**Negri's Complaint has failed to properly allege the required elements for any of his claims and accordingly, Negri's Complaint has failed to state a claim upon which relief can be granted**

Even if the facts of the Complaint are taken as true, Negri has failed to properly allege the elements of any of his claims.

**Count II Violation of New York Debtor Creditor Law Sec. 273** (alleged transfer of $87,000 from NEI account to Arthur Friedman): Regardless of whether the allegations of this

Count are taken as true, they do not support any claims against Arthur Friedman.  Section 273 of the New York Debtor Creditor law provides that: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration"

Although Negri claims that he is a creditor of First Ascent, he does not allege that First Ascent made any transfers of assets to Friedman that were fraudulent or should be set aside. Moreover, Negri fails to explain, and indeed it does not make any sense, how a transfer of assets by NEI would render First Ascent – a completely separate entity – insolvent.   These inconsistencies in the allegations cannot be rectified by amendment (indeed the court has instructed that no further amendments will be permitted) and accordingly Count II against Arthur Friedman for violation of the New York Debtor Creditor law should be dismissed with prejudice.

**Count III Violation of New York Debtor Creditor Law Sec. 273** (alleged transfer of all of Michael Friedman's assets, including the stock of Fresh Harvest Products, Inc. to Arthur Friedman):  In a second count against Arthur Friedman for violation of the New York Debtor Creditor law, Negri once again relies on Section 273.   As noted above, Negri has made allegations against Arthur Friedman in this count that are completely unsubstantiated.   Blanket allegations, without support, are not sufficient to survive a motion to dismiss.  The United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) stated that: "under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), at 555, but the court did find that Rule 8 requires the non-moving party to show **plausible factual allegations**, accepted as true, to "state a

claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556.

Here, the allegations are lacking in facial plausibility. First, a simple review of the publicly available filings of Fresh Harvest Products[2] (symbol FRHV) demonstrate that there was never any transfer of Fresh Harvest Stock to Arthur Friedman – major stockholders and insiders, which Michael Friedman is both are required to disclose their stock transfers to the public (See Section 16[a] of the Securities Exchange Act, 15 U.S.C. § 78). Further, Negri supports his claim with nothing but blanket assertions of supposed asset transfers. There is no information about what was transferred (other than stock, debunked above), if anything, nor is there any information about what "assets" Michael Friedman even had. Negri does not make any reference to when transfers were made or how the transfers were made. We are simply left to take Negri at his word that transfers were actually made to Arthur Friedman despite all of the evidence to the contrary. The blanket assertions by Negri are not enough to satisfy the "facial plausibility" requirement and accordingly this claim should be dismissed.

**Count V Unjust enrichment:** "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011) citing Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421, 285 NE2d 695 (1972). A plaintiff must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered'" Id. Although privity is not required for an unjust enrichment claim, a claim **will**

---

[2] The filings are attached to the Studwell Declaration as **Exhibit A**.

not be supported if the connection between the parties is too attenuated. *see* Sperry v Crompton Corp., 8 NY3d 204, 215, 863 NE2d 1012 (2007).

Here, the claims of Negri fail for several reasons. First, the five paragraphs of allegations against Arthur Friedman fail to establish that Arthur Friedman was "enriched" at the "expense" of Negri himself. In fact, it was NEI's funds that were allegedly used to pay the $87,000, not Negri's own funds. Further, there are no allegations in the Complaint alleging any sort of relationship between Negri and Arthur Friedman that would establish any connection between those two parties. As noted in the Mandarin Trading case, there must be allegations in the Complaint that would indicate a relationship between the parties, or at least an awareness by the "enriched party" of the existence of the party against whom he is taking a benefit. Mandarin Trading Ltd., 16 N.Y.3d at 182. In other words, in order to prevail, Negri must show that Arthur Friedman, upon allegedly receiving the $87,000 from NEI (incidentally at a time that there were no issues between any of the parties), knew that he was being unjustly enriched to the detriment of Negri himself. There are no such allegations to this effect and indeed, there cannot be even if an amendment were permitted by this Court. Accordingly, because Negri cannot establish the elements for his claims of unjust enrichment, his Complaint against Arthur Friedman should be dismissed.

**Count VII Breach of Contract:** In New York, The following elements must be established on a breach of contract claim: (1) a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) breach by the defendant; and (4) damages. See Noise in Attic Prods., Inc. v London Records, 10 A.D.3d 303, 307 (1st Dep't 2004); Furia v Furia, 116 AD2d 694, 695 (2d Dep't 1986). The claim against Arthur Friedman is missing the first of these three critical elements – the existence of a binding contract. It is clear from the pleadings that the

contractual relationship for the sale of NEI, if any, was between Michael Friedman and Negri or First Ascent and Negri – not Arthur Friedman.  Moreover, despite the allegations to the contrary, Arthur Friedman was never a member of First Ascent, LLC and he certainly was not a shareholder at the time the transaction took place.  Indeed it would have been improper for Arthur Friedman to serve as an escrow agent for a transaction that he was involved in – escrow agents are considered fiduciaries in New York owing obligations to all parties who are interested in the transaction. Negri has been provided information on First Ascent substantiating that Arthur Friedman was never a member of the LLC[3] and a request was made to dismiss this count of the complaint, but Negri has refused necessitating this motion. Because there was no contract between Negri and Arthur Friedman, this count should be dismissed.

<u>**Point IV**</u>

**The unsupported and unsubstantiated allegations by Negri in the complaint violate Rule 11 of the Federal Rules of Civil Procedure and are sanctionable.**

A request has been made to counsel for Negri to dismiss certain claims against Arthur Friedman based on the fact that the allegations supporting those claims are unsupported, unsubstantiated and inaccurate.  According to Federal Rule of Civil Procedure 11 "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: 1) it is not being presented for any **improper purpose**, such as to **harass,** cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending,

---

[3] See the filings of First Ascent, LLC establishing that only Michael Friedman was a member, attached to the Studwell Declaration as **Exhibit B**.

modifying, or reversing existing law or for establishing new law; (3) the **factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" (emphasis added).

The allegations against Arthur Friedman, particularly those relating to the receipt of stock of the publicly traded company Fresh Harvest, the fact that he was "complicit in the [alleged] scheme" by Michael Friedman, and that he was a member of First Ascent, LLC are all completely unsupported. Negri has asserted these claims without determining whether they had any factual support – they do not – and it appears that Negri is simply attempting to keep Arthur Friedman in this litigation (despite no contractual relationship) for the improper purpose of putting pressure on Arthur's son, Michael Friedman, a defendant in this action. Negri's conduct violates Rule 11 and Arthur Friedman will be making an appropriate request for sanctions.

## CONCLUSION

Negri, the individual, does not have standing to assert his claims against Arthur Friedman, nor are his claims ripe for consideration by this Court. Further, even taking the allegations in the Complaint as true, which we must on a motion to dismiss, Negri cannot establish the necessary elements of his various claims nor can he establish the necessary relationship between himself and Arthur Friedman. Accordingly, Negri's complaint should be dismissed.

Dated: April 20, 2015

**THE KILLIAN FIRM, P.C.**
*Attorneys for Defendant*
*Arthur Friedman*


By: _____/s/_____

Laura V. Studwell
The Killian Firm, P.C.
555 Route 1 South, Suite 430
Iselin, New Jersey 08830
732-912-2100
lstudwell@tkfpc.com