USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/31/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
RYAN J. NEGRI,                                                :
                                                              :
                            Plaintiff,                        :     1:14-cv-10233-GHW
                                                              :
               -v -                                           :     MEMORANDUM OPINION
                                                              :          AND ORDER
MICHAEL J. FRIEDMAN,                                          :
                                                              :
                            Defendant.                        :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

This case between two *pro se* litigants arises out of a transaction in which Plaintiff Ryan Negri ("Negri") sold his company, Negri Electronics, to First Ascent, LLC ("First Ascent"), a company owned by Defendant Michael Friedman ("Friedman"). Negri originally filed his complaint, along with his brother Philip Negri, against Friedman, Defendant's father Arthur Friedman, Defendant's business partner P.J. Louis, and First Ascent. Plaintiff alleged that these Defendants fraudulently misled Plaintiff into entering into the transaction, fraudulently transferred money out of Negri Electronics, were unjustly enriched by those transfers, and breached the agreement underlying the transaction. As this case progressed, most of the Defendants were dismissed from the case, and Plaintiff Philip Negri withdrew his remaining claims. While Ryan Negri's claims against Friedman remained, they can no longer do so, as they each fail as a matter of law. Plaintiff has presented no facts that support his allegations, and therefore Defendant's motion for summary judgment is GRANTED.

## II.     BACKGROUND[1]

Plaintiff founded his company, Negri Electronics, in 2006. Declaration of Michael J. Friedman in Support of Motion for Summary Judgment ("Friedman Decl.") Ex. S ("Negri Dep. Tr.") 8:24-25. The company was initially based in California, but later moved to Nevada. *Id.* 11:16-17; Friedman Decl. Ex. E at 7. Negri Electronics sold electronics such as cellular phones, tablets, and cameras. Negri Dep. Tr. 9:21-24. In early 2013, Friedman formed First Ascent, LLC, a New York-based private equity firm that "focused on acquiring and growing companies in the areas of telecommunications, information technology, data management, and media." Defendant's Local Rule 56.1 Statement ("Def.'s 56.1") at ¶ 1; Friedman Decl. Ex. T. In what would seem to be fortuitous circumstances, around the same time, Negri began speaking to an investment banker named Todd Sherman about "a potential investment or sale for [Negri Electronics]." Negri Dep. Tr. 14:4-7. Negri's company was therefore—in theory—exactly the kind of company that Friedman's company was seeking to acquire at the exact same time that Negri was pursuing a potential sale.

Sherman introduced Friedman and Negri in late 2013 to discuss such a potential acquisition. Def.'s 56.1 ¶¶ 6-7, Negri Dep. Tr. 15:20-16:4. After entering into a non-disclosure agreement, the parties conducted initial due diligence. Def.'s 56.1 ¶ 9; Friedman Decl. Ex. C. On December 17, 2013, Friedman and P.J. Louis, on behalf of First Ascent, visited Negri Electronics in Las Vegas. Def.'s 56.1 ¶ 13. On December 24, 2013, a Stock Purchase Agreement was entered between Ryan Negri and Philip Negri (as shareholders), Negri Electronics, and First Ascent, LLC. Friedman Decl. Ex. G (the "Agreement"). The Agreement provided that First Ascent would acquire the outstanding stock of Negri Electronics for $7,212,819.34, payable over four years. *Id.* at 1 & Appendix A. At closing, the Negri brothers were to be given a total of $252,837.24, which Plaintiff admits he

---

[1] Unless otherwise stated, the following facts are not disputed for purposes of this motion, or are taken in the light most favorable to Negri.

received. *Id.* Appendix A; Am. Compl. ¶ 40. Friedman was not a party to this agreement in his individual capacity, although he did sign the agreement on behalf of First Ascent. *Id.* In addition to the Agreement concerning the sale of the company, Negri and First Ascent also entered into a consulting agreement pursuant to which Negri would remain with the company as a consultant to help with the transition. Negri Dep. Tr. 25:9-12. On December 31, 2013, Negri published a press release announcing the acquisition, noting the "exciting growth opportunity" the transaction presented. Friedman Decl. Ex. H. at 3.

Soon after this agreement was signed, First Ascent took control of the operations of Negri Electronics, and things quickly took a turn for the worse. The parties disagree about who caused this unraveling. In the Amended Complaint, Negri claims that Defendant began looting the company through large cash withdrawals. Am. Compl. ¶¶ 41-45. Friedman claims, to the contrary, that upon taking over Negri Electronics he realized that the company had failed to pay various bills to vendors and suppliers. *See* Def.'s 56.1 ¶¶ 21-24; Friedman Decl. Ex. F (emails containing requests for outstanding payments). Friedman states that the acquired electronics company appeared to be "a sinking ship and a ponzi [sic] scheme in disguise." Def.'s 56.1 ¶ 70. An additional obstacle presented itself, on February 11, 2014 when Plaintiff submitted a letter to Defendant resigning from the company, stating "I sincerely wanted to stay on and help the company grow, but as you know things changed as soon as PJ [Louis] took the reins." Friedman Decl. Ex. K.

Friedman asserts that the circumstances surrounding the poor financial state of Negri Electronics led him to seek out funding sources "in order to keep the Company afloat." Def.'s 56.1 ¶ 54. On March 31, 2014, Defendant secured a $3 million line of credit for Negri Electronics by entering into a credit agreement with TCA Global Credit Master Fund, LP ("TCA"). Friedman Decl. Ex. L. As part of the credit agreement, Negri agreed to subordinate his rights and claims to TCA. Friedman Decl. Ex. U; Negri Dep. Tr. 35:5-12. The Amended Complaint alleges that on July 1, 2014, Friedman defaulted and failed to pay Negri payment due under the Agreement. Am.

3

Compl. ¶ 58.  By the end of that year, Plaintiff brought this case seeking payment under the Agreement and alleging that Defendant had misused company assets in a "shameless course of conduct."  Am. Compl. ¶ 66.  While this transaction clearly failed, there are no facts in the record that indicate the ultimate fate of the companies that entered into this doomed purchase agreement.

### III. PROCEDURAL BACKGROUND

Plaintiff brought his initial complaint, along with his brother Philip Negri, against Defendants Michael Friedman, Arthur Friedman, First Ascent, LLC, and P.J. Louis, on December 31, 2014.  Dkt. No. 1.  Plaintiffs amended their complaint on April 8, 2015.  Dkt. No. 29.  On April 30, 2015, Plaintiffs voluntarily dismissed Defendant P.J. Louis, and on May 4, 2015, voluntarily dismissed Defendants Arthur Friedman and First Ascent LLC.  Dkt. Nos. 48 & 51.  On September 4, 2015, Plaintiff Philip Negri dismissed his claims against remaining Defendant Michael Friedman, leaving only Plaintiff Ryan Negri's claims against Defendant Michael Friedman.

Discovery between the two remaining parties took place from September 2015 to October 2016.  Defendant moved for summary judgment on all claims on December 20, 2016.  Dkt. No. 123.  Plaintiff's opposition was due on February 2, 2017 pursuant to the Court's briefing schedule.  Dkt. No. 119.  The Court *sua sponte* extended the deadline for Plaintiff's opposition to February 24, 2017.  Dkt. No. 127.  Plaintiff did not file an opposition by that date.  The Court informed Plaintiff that Defendant's motion for summary judgment would be decided in due course.  Dkt. No. 129.

### IV. LEGAL STANDARD

Defendant is entitled to summary judgment on a claim if he can "show[ ] that there is no genuine dispute as to any material fact and [he is] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A

4

genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To defeat a motion for summary judgment, Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Here, despite a *sua sponte* extension of time for Plaintiff to oppose Defendant's motion for summary judgment, Plaintiff failed to file any response to the motion. The Second Circuit has explained how district courts should review unopposed motions for summary judgment. *See Jackson v. Fed. Express*, 766 F.3d 189 (2d Cir. 2014). As an initial matter, a non-movant is not required to respond to the motion, but "non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted." *Id.* at 194 (citing Fed. R. Civ. P. 56(e)(2)). Further, when deciding an unopposed motion for summary judgment, the district court need not "robotically replicate the defendant-movant's statement of undisputed facts and references to the record." *Id.* at 197. In such a circumstance, all the court is required to do is to "examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Id.*

## V. DISCUSSION

### A. Choice of Law

A federal court sitting in diversity must apply the choice of law rules of the forum state, which in this case is New York. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155,

5

157 (2d Cir. 2012). Under New York choice-of-law rules, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) (quoting *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993)). "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Licci*, 672 F.3d at 157. If, however, an actual conflict exists, then "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985) (quoting *Miller v. Miller*, 237 N.E.2d 877, 879 (N.Y. 1968)) (internal quotations and alterations omitted).

In tort-law disputes, "interest analysis distinguishes between two sets of rules: conduct-regulating rules and loss-allocating rules." *Licci*, 672 F.3d at 158. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993). Thus, "New York courts apply the law of the place where the tort occurred with regard to 'conduct regulating' rules." *Rochford v. Woodloch Pines, Inc.*, 824 F. Supp. 2d 343, 349 (E.D.N.Y. 2011).

Here, Plaintiff's claims for fraudulent misrepresentation and unjust enrichment require a choice-of-law analysis.[2] Defendant cites exclusively to Nevada law in his memorandum in support

---

[2] Although Section 9(j) of the Stock Purchase Agreement provides that the Agreement "shall be governed by and construed in accordance with the laws of the State of Nevada," Friedman Decl. Ex. G, that provision does not apply to the claims for fraudulent misrepresentation and unjust enrichment asserted in this action. "[U]nder New York law, a contractual choice of law provision governs only a cause of action sounding in contract, not one sounding in tort." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2d Cir. 1997). Courts have recognized an exception to this rule, however, where the language of the provision is "sufficiently broad as to encompass the entire relationship between the contracting parties." *H.S.W. Enters. v. Woo Lae Oak, Inc.*, 171 F. Supp. 2d 135, 141 n.5 (S.D.N.Y. 2001); *compare Turtur v. Rothschild Registry Int'l, Inc.*,

6

of his motion for summary judgment, but does not brief the choice-of-law question. Plaintiff, of course, raises no alternative, but the Court notes that that he brings causes of action under New York Debtor & Creditor Law. Although the choice-of-law analysis would normally require the Court to determine whether there is an actual conflict between the law governing these two tort claims under New York and Nevada law, the Court will forgo that analysis here because, as explained below, the application of Nevada law is appropriate here regardless of whether or not a conflict exists.

If there was an actual conflict between the laws governing fraudulent misrepresentation and unjust enrichment in Nevada and New York, then the Court would undergo the required interest analysis. Both causes of action are "conduct regulating," and as a result, the Court would apply the law of the state that has the most significant contacts with the tort. *See In re Grant Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148-49 (S.D.N.Y. 2008) ("With respect to the plaintiffs' claim[] for . . . unjust enrichment, the Court applies the law of the jurisdiction with the most significant contacts to this dispute."); *see also Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996) ("Thus, because the case at hand concerns laws regulating allegedly fraudulent conduct, the proper body of law to be applied turns on the locus of the tort."). Here, the locus of the tort is Nevada, where Negri resides, "as that is the locus of [his] economic loss." *Grund v. Delaware Charter Guar. & Trust Co.*, 788 F. Supp. 2d 226, 244 (S.D.N.Y. 2011) (citing *In re Currency Conversion Fee Antitrust Litig.,* 230 F.R.D. 303, 311 (S.D.N.Y. 2004)). If an actual conflict existed, therefore, the Court would apply Nevada's unjust enrichment and fraudulent misrepresentation law.

---

26 F.3d 304, 309-10 (2d Cir. 1994) (applying contractually selected law to fraudulent inducement claim because the choice-of-law provision expressly applied to disputes "arising out of or relating to" the contract), *with Refco Grp Ltd., LLC v. Cantor Fitzgerald, L.P*, No. 13-cv-1654 (RA), 2014 WL 2610608, at *40 (S.D.N.Y. June 10, 2014) (not applying contractually selected law to fraudulent conveyance claim where provision stated only that it will be "construed and enforced in accordance with, and the rights of the parties shall be governed by," Delaware law). Here, because the choice-of-law provision does not contain such broad language, and because Friedman's claims for fraudulent misrepresentation and unjust enrichment sound in tort, the contractual provision does not apply.

7

In the alternative, if there were no actual conflict between the laws of Nevada and New York with respect to these two causes of action, the Court would not be required to apply New York law; in its discretion, the Court could instead apply Nevada law. *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."); *see also Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 257 (S.D.N.Y. 2011) ("In the absence of an actual conflict, courts may apply New York law, but are not required to do so."). In the event that there was no actual conflict between Nevada and New York's laws governing fraudulent misrepresentation and unjust enrichment, the Court could—and would—choose to apply Nevada law. Thus regardless of whether or not a conflict exists between the two states' laws here, the Court may—and will—apply Nevada law to analyze these claims.

> B. <u>Defendant is Entitled to Summary Judgment on Plaintiff's Claim for False Misrepresentation</u>

Under Nevada law, to succeed on a fraudulent misrepresentation claim, the plaintiff must prove "(1) [a] false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (citing *Bulbman Inc. v. Nevada Bell,* 825 P.2d 588, 592 (Nev. 1992). "Further, where an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper." *Id.*

Negri does not identify specific misrepresentations made by Friedman, and there are no facts in the record that indicate that Friedman knowingly made any false statements. During Plaintiff's

deposition, when asked what false statements were made, Negri stated "Specifically the wealth of the executive of First Ascent, promising and never furnishing documents, promises to run the company local as opposed to absentee." Negri Dep. Tr. 49:2-10. Negri does not attribute these alleged misrepresentations—to the extent these broad categories of information could be construed as misrepresentations—to Defendant. *See Larson v. Homecomings Fin.* LLC, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (dismissing plaintiff's fraudulent misrepresentation claims when Plaintiff did not specifically name which Defendant made the alleged misrepresentation); *see also Gains v. Flagstar Bank, FSB*, No. 2:12-cv-2154, 2013 WL 2232918, at *3 (D. Nev. May 17, 2013) (dismissing a claim for fraudulent misrepresentation because "[t]here are no specific facts, much less a who, what, when, where, and how"). On that basis alone, summary judgment is appropriate here in favor of Defendant with respect to this claim.

In addition, Negri has not presented any facts that suggest he relied upon any of those categories of statements in entering the Stock Purchase Agreement or Credit Agreement. *See Vieira v. Magee*, 373 P.3d 970 (Nev. 2011) (citing Restatement (Second) of Torts § 537 in upholding a lower court's summary judgment decision where there was no basis for a finding of reliance on a misrepresentation). Indeed, Plaintiff's deposition testimony indicates that he worked with an attorney in negotiating the sale of Negri Electronics, and that investment banker Todd Sherman advised him to close on the transaction. Negri Dep. Tr. 17:10-15; 20:3-9; 54:22-23. There is no factual support on the record for the claim that he directly relied on any statements—whether true or false—made by Defendant. Because multiple essential elements of Plaintiff's fraudulent misrepresentation claim are absent here, summary judgment is appropriate for Defendant on Count I of the Amended Complaint.

### C. Defendant is Entitled to Summary Judgment on Plaintiff's Claims Under New York Debtor & Creditor Law

Plaintiff brings two claims against Defendant under New York's constructive fraudulent conveyance statute, N.Y. Debtor and Creditor Law § 273. First, Negri alleges that in January 2014, Friedman transferred $87,000 from the operating account of Negri Electronics to Arthur Friedman, causing the company to become insolvent. Am. Compl., Count II, ¶¶ 77-82. Second, Negri alleges that in early 2014, Friedman transferred his personal assets to Arthur Friedman, rendering Friedman insolvent so that he could evade creditors. Am. Compl., Count III, ¶¶ 83-89.

"There are two elements of a constructive fraud claim [under N.Y. Debt. & Credit. Law § 273], including (1) the conveyance was made without fair consideration; and (2) the transferor was or by the conveyance was rendered insolvent." *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 172 (W.D.N.Y. 2003) (citing *Sklaroff v. Rosenberg,* 125 F. Supp. 2d 67, 73 (S.D.N.Y. 2000)). Negri has not presented evidence to satisfy these elements for either of his claims under this statute.

There is no evidence presented to the Court that shows an $87,000 transfer from the Negri Electronics operating account. The only evidence that might support that claim is a February 2014 transfer for $85,000, which lists Arthur Friedman's name on Negri Electronics' operating account statement. Friedman Decl. Ex. M, at 3. That transfer, however, appears to be a credit into the Negri Electronics account. Even if this transfer was a withdrawal from the account, and even if this was the transfer that Plaintiff alleges was fraudulent, there are also no facts supporting the details of the transfer that would permit a finding that the conveyance was made without fair consideration. Moreover, there is evidence that Negri Electronics continued to operate after that February transfer. *See* Friedman Decl. Ex. M, at 1 (April 2014 account statement showing an ending balance of $42,181.03). Because there is no evidence to support the required elements of Plaintiff's first claim

under N.Y. Debt. & Credit. Law § 273, Defendant is entitled to summary judgment on Count II of the Amended Complaint.

Additionally, there is absolutely no evidence on the record that Defendant transferred his personal assets to Arthur Friedman to support Plaintiff's second claim under § 273. As an initial matter, Plaintiff alleges that he is a creditor of Friedman "as a result of Friedman's default on his personal guarantee of the payment obligations set forth in the Agreement." Am. Compl. ¶ 84. As discussed in more detail below with respect to Plaintiff's breach of contract claims, the evidence presented to the Court shows that Friedman did not personally sign the Agreement, so any personal guarantee contained in the Agreement is not enforceable as to him. In any event, with no evidence that Friedman ever transferred his personal assets to his father, Plaintiff's second claim under N.Y. Debt. & Credit. Law § 273 fails as a matter of law. Defendant is therefore entitled to summary judgment on Count III of the Amended Complaint.

> D. Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Unjust Enrichment

Although Plaintiff's claim for unjust enrichment presents a choice-of-law issue, as explained above, the Court will apply Nevada law to the Plaintiff's claim for unjust enrichment.[3] Under Nevada law, the elements of an unjust enrichment claim are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such (3) benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014) (citing *Unionamerica Mortg. & Equity Trust v.*

---

[3] Courts in this district have determined that there is an actual conflict between the unjust enrichment laws of New York and Nevada. *See Prime Mover Capital Partners, L.P. v. Elixir Gaming Tech.*, 793 F. Supp. 2d 651, 678-79 n.141 (S.D.N.Y. 2011) ("New York law requires that the plaintiff show a direct benefit to the defendant, whereas Nevada law allows recovery also where the benefit to the defendant was indirect.").

*McDonald,* 626 P.2d 1272, 1273 (Nev. 1981)). "Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Id.*

Plaintiff alleges that—"almost immediately upon taking control of the company"—Defendant withdrew over $137,000 from the operating account of Negri Electronics "for [his] own personal use." Am. Compl. ¶ 91. As with the transfers that allegedly served as the basis for Plaintiff's fraudulent conveyance claims, there is no evidence that these transfers took place. Additionally, Plaintiff's claim fails on the basis of the allegation alone, because the first element of an unjust enrichment claim is that a benefit was conferred on the defendant *by the plaintiff.* Transfers made from the company's operating account—after the company was no longer in Plaintiff's control—do not support that claim that Plaintiff conferred a benefit on Defendant.[4] There is similarly no evidence to suggest that Friedman used the money from those withdrawals in a way that would be inequitable. In fact, Plaintiff admitted during his deposition that he did not know what the alleged withdrawals were used for. Negri Dep. Tr. 48:18-21. There are no facts before the Court to support the necessary elements for Plaintiff's unjust enrichment claim, and Defendant is therefore entitled to summary judgment on Count IV of the Amended Complaint.

E. <u>Defendant is Entitled to Summary Judgment on Plaintiff's Claims for Breach of Contract</u>

Plaintiff brings two claims for breach of contract against Defendant. First, Plaintiff alleges that Friedman breached the Agreement, "pursuant to which Friedman personally guaranteed all payment obligations due to Plaintiffs." Am. Compl, Count VI, ¶ 102. Second, Plaintiff alleges that Defendant should be held liable for damages resulting from First Ascent's failure to pay Plaintiff

---

[4] To the extent Plaintiff's argument is that the withdrawals damaged Negri Electronics and decreased the value of the stock, and thus that Plaintiff is damaged *qua* shareholder of the company, Defendant correctly notes that there is no evidence that there was a reduction in the value of Negri's stock. Defendant is therefore entitled to summary judgment on this claim for the additional reason that there is no proof of damages to Plaintiff.

under the Agreement because Defendant "misused the corporate form." Am. Compl., Count VII, ¶ 112.

The Stock Purchase Agreement that is the subject of these breach of contract claims contains a choice-of-law provision: Section 9(j) of the Agreement states that it "shall be governed by and construed in accordance with the laws of the State of Nevada." Friedman Decl. Ex. G. Since "New York law gives full effect to parties' choice-of-law provisions," the Court will apply Nevada law to Plaintiff's breach of contract claims. *Krock v. Lipsay*, 97 F.3d at 645. "In Nevada, a plaintiff alleges a breach of contract by pleading four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Johnston v. Int'l Mixed Martial Arts Fed'n,* No. 2:14-CV-941-JAD-NJK, 2015 WL 273619, at *3 (D. Nev. Jan. 22, 2015) (citing *Bernard v. Rockhill Dev. Co.,* 734 P.2d 1238, 1240 (Nev. 1987)).

Here, Plaintiff's first breach of contract action fails because there is no valid contract between Plaintiff and Friedman individually. Although page 2 of the Agreement states "This Agreement and the accompanying Payments shall be guaranteed by Michael Friedman," Friedman is not identified as a party to the Agreement and he did not sign this contract in his personal capacity. "Under . . . Nevada law, contracts of guarantee are subject to the statute of frauds." *Tri-Pac Commercial Brokerage, Inc. v. Boreta*, 931 P.2d 726, 728 (Nev. 1997) (citing *Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995)). Nevada's statute of frauds, NRS 111.220, requires that "the substantial parts of the contract must be embodied in writing with such a degree of certainty so as to make clear and definite the intention of the parties without resorting to oral evidence." *Tri-Pac*, 931 P.2d at 728 (citing *Stanley v. Levy & Zentner Co.,* 112 P.2d 1047, 1053 (1941)). Specifically, "the terms and conditions of all the promises constituting the contract and *by whom* and to whom the promises are made" must be stated in the writing with certainty. *Id.* (emphasis added) (internal quotation marks omitted). In *Tri-Pac*, the Supreme Court of Nevada refused to enforce a guaranty clause in a promissory note against a specific Defendant because that Defendant did not sign the note. Here,

Friedman did not personally sign the Agreement, and thus any personal guaranty contained within it is not enforceable against him. Summary judgment in favor of Defendant is appropriate on Count VI of the Amended Complaint.

Plaintiff's second breach of contract claim also cannot succeed because Plaintiff has not presented sufficient evidence to justify breaching the corporate veil of First Ascent, LLC to hold Friedman personally liable for any alleged breach of contract. "Nevada has long recognized that although corporations are generally to be treated as separate legal entities, the equitable remedy of 'piercing the corporate veil' may be available to a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000).[5]

The Supreme Court of Nevada has explained that "[t]he elements for finding an alter ego, which must be established by a preponderance of the evidence, are: (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice." *Id.* at 846-47 (citing *Polaris Indus. Corp. v. Kaplan,* 747 P.2d 884, 886 (Nev. 1987)). In addition, other facts "may indicate the existence of an alter ego relationship: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Id.* at 847. The determination of whether the corporate veil should be pierced is to be decided based on the particular circumstances of each case, and Nevada courts have emphasized that "[t]he corporate

---

[5] The Supreme Court of Nevada has applied the statutory scheme that governs veil piercing for corporations to limited liability corporations. *See Webb v. Shull*, 270 P.3d 1266, 1271 n.3 (Nev. 2012) ("The parties assume that NRS 78.747, which is part of the statutory chapter governing corporations, applies to the alter ego assertion against Shull and Celebrate, an LLC. Accordingly, for purposes of this appeal, we likewise assume, without deciding, that the statute applies and analyze their alter ego arguments under that standard."). The Court will thus analyze veil piercing as to First Ascent, LLC under this same legal framework.

cloak is not lightly thrown aside." *Id.* at 846 (quoting *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916, 916 (Nev. 1969)).

Here, although Friedman controlled First Ascent, LLC, Negri has not presented any facts that would suggest that Friedman used his company fraudulently, and thus cannot meet the third required element in order to breach the corporate veil. There is no evidence before the Court that the funds of First Ascent were commingled, undercapitalized, or diverted in an unauthorized fashion. In fact, there is no evidence whatsoever about First Ascent's finances in the record, and thus there is no basis whatsoever for piercing the corporate veil and holding Defendant responsible for the breach of contract claim against First Ascent. Defendant is therefore entitled to summary judgment on Count VII of the Amended Complaint.

## VI. CONCLUSION

Simply put, none of Plaintiff's claims are supported by evidence in this case, and thus summary judgment in favor of Defendant is appropriate. Defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. 123, to mail a copy of this order to Plaintiff and Defendant by certified mail, and to close the case.

SO ORDERED.

Dated: May 31, 2017  
New York, New York

GREGORY H. WOODS  
United States District Judge

15